## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| VINCENT A.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | No. 16 C 7136 |
| | ) | |
| v. | ) | **Magistrate Judge** |
| | ) | **Maria Valdez** |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security,[2] | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Vincent A.'s claim for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's request to reverse the Commissioner's decision is denied, and the Commissioner's motion for summary judgment [Doc. No. 26] is granted.

---

[1] In accordance with Internal Operating Procedure 22, the Court refers to Plaintiff only by his first name and the first initial of his last name.

[2] Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

# BACKGROUND

## I.     PROCEDURAL HISTORY

On February 23, 2013, Plaintiff filed his application for DIB, alleging disability since October 3, 2008 due to a back injury that resulted in spinal fusion. (R. 96, 115, 201.) His application was denied initially and again upon reconsideration. (R. 96, 106, 111–20.) Plaintiff requested a hearing, which took place before an Administrative Law Judge ("ALJ") on December 17, 2014. (R. 32–87, 121–22.) Plaintiff was represented by counsel and testified.  (R. 32–34, 36–77.) A vocational expert also offered testimony. (R. 77–84.) At the hearing, Plaintiff, through his counsel, amended his alleged disability onset date to December 31, 2008. (R. 19, 38–39.) On February 5, 2015, the ALJ issued an unfavorable decision finding Plaintiff not disabled. (R. 16–31.) The Appeals Council denied review on May 5, 2016. (R. 1–5.)

## II.    ALJ DECISION

In determining that Plaintiff was not disabled, the ALJ analyzed Plaintiff's claim according to the five-step sequential evaluation process established under the Social Security Act. (R. 19–21); *see* 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 31, 2008, his amended onset date, through September 30, 2011, his date last insured (the "Relevant Period"). (R. 21.) At step two, the ALJ found that Plaintiff suffered from severe lumbar spine impairments during the Relevant Period. (*Id.*) The ALJ further found that although Plaintiff was at least moderately

obese during most of the Relevant Period, his obesity was non-severe. (*Id.*) At step three, the ALJ determined that, during the Relevant Period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 22.)

Before step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") during the Relevant Period to perform "medium work" as defined in 20 C.F.R. § 404.1567(c), subject to several additional limitations.[3] (R. 22.) At step four, the ALJ concluded that Plaintiff could not perform any of his past relevant work as a _____ during the Relevant Period. (R. 25–26.) However, at step five, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could have performed, such as office helper, mail clerk, and labeler, leading to the conclusion that Plaintiff was not disabled during the Relevant Period. (R. 26–27.)

## DISCUSSION

## I.    ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical

---

[3] The ALJ limited Plaintiff as follows:

> [Plaintiff] could lift up to 41 pounds occasionally and lift or carry up to 24 pounds frequently, perform eight hours of exertional activity with sitting up to 30 minutes at a time, and standing up to 50 minutes at a time. [Plaintiff] could not climb ladders, ropes or scaffolds and could occasionally climb ramps and stairs, stoop, crouch, kneel and crawl.

(R. 22.)

or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability, the ALJ considers five questions in the following order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation (i.e., past work)? and (5) Is the plaintiff unable to perform any other work? *See Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992); 20 C.F.R. § 404.1520(a)(4).

An affirmative answer at either step three or step five leads to a finding of disability. *Young*, 957 F.2d at 389. A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one through four. *Id.* If the plaintiff meets this burden, the burden shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *See Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

## II.    JUDICIAL REVIEW

Because the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner, which is reviewable by this Court. 42 U.S.C. § 405(g); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Thus, judicial review of the ALJ's decision is

limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). This Court may not substitute its judgment for that of the ALJ, reweigh evidence, resolve conflicts, or decide questions of credibility. *Id.*; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "reasonable minds could differ" so long as "the decision is adequately supported") (internal citation and quotations omitted).

Although the ALJ need not "address every piece of evidence or testimony in the record, the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). This requires the building of "an accurate and logical bridge from the evidence to [the ALJ's] conclusion." *Clifford*, 227 F.3d at 872. The ALJ must explain his "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *see also Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions and must adequately articulate his analysis so that we can follow his reasoning.") (internal citations omitted).

The Court plays an "extremely limited" role in reviewing the ALJ's decision. *Elder*, 529 F.3d at 413. Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining disability falls upon the ALJ, not the Court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). Even so, an ALJ must consider all relevant evidence, and it cannot "select and discuss only that evidence that favors his ultimate conclusion." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

## III.    ANALYSIS

Plaintiff argues that the ALJ reversibly erred by improperly evaluating Plaintiff's RFC, failing to discuss evidence after Plaintiff's date last insured, and finding Plaintiff "not entirely credible." For the reasons that follow, the Court disagrees.

### A.    The ALJ's RFC Assessment

"The RFC is an assessment of what work-related activities the claimant can perform despite [his] limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). The ALJ makes this assessment "based upon the medical evidence in the record and other evidence, such as testimony by the claimant or his friends and family." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

Here, the ALJ's RFC assessment restricted Plaintiff to "medium work" as defined in 20 C.F.R. § 404.1567(c) subject to several additional limitations. (R. 22.) These limitations restrict Plaintiff to occasionally lifting forty-one pounds; frequently lifting or carrying twenty-four pounds; performing eight hours of

exertional activity with sitting up to thirty minutes at a time and standing up to fifty minutes at a time; never climbing ladders, ropes, or scaffolds; and occasional stooping, crouching, kneeling, crawling, and climbing ramps and stairs. (*Id.*)

Plaintiff contends that in crafting this RFC, the ALJ erred by: (1) relying upon a doctor's summary of a functional capacity evaluation ("FCE") instead of the actual evaluation itself; and (2) making a medical determination regarding another doctor's examination. Neither contention is persuasive.

### 1. Dr. Lorenz's June 2010 Summary of Plaintiff's FCE

In April 2010, Mark Lorenz, M.D., a physician at Hinsdale Orthopaedics, evaluated Plaintiff's low-back pain and recommended that he undergo an FCE. (R. 443–45.) After Plaintiff underwent the FCE, he returned to see Dr. Lorenz in June 2010. (R. 446.) At this visit, Dr. Lorenz summarized the FCE as "a valid test" showing Plaintiff "at a light physical demand, maximum lifting about 24-pound[s] frequently, 41-pounds occasionally, occasional bending and stooping and crouching, maximum sitting 30-minutes, maximum standing 50-minutes." (*Id.*) Although Dr. Lorenz believed that Plaintiff could not "return to medium-heavy work" as a warehouse worker, Dr. Lorenz recommended that Plaintiff "return to work within the parameters of the FCE" and deemed him to be at maximum medical improvement. (*Id.*)

The FCE itself was not in the record. [*See* Doc. No. 27 at 1.] Nonetheless, the ALJ gave the FCE results—as recited in Dr. Lorenz's June 2010 note—the "most weight" because they were "reflective of [Plaintiff's] capacities by the end of the date

last insured." (R. 25.) Except for the "light physical demand" restriction, the ALJ incorporated all the FCE restrictions acknowledged by Dr. Lorenz into Plaintiff's RFC. (*See* R. 22, 446.) Plaintiff contends, however, that Dr. Lorenz's recitation of the FCE "did not provide enough information for the ALJ to make a determination as to [Plaintiff's] ability to work full-time" and the limitations from the FCE are incomplete; as such, Plaintiff believes that the ALJ should have developed Dr. Lorenz's opinion further or obtained a copy of the FCE itself. [Doc. No. 17-1 at 8–11.]

According to Plaintiff, the ALJ improperly assumed that Plaintiff could work full-time based on the results of the FCE. But the ALJ made no such assumption. Instead, the ALJ assessed Plaintiff's RFC based on the evidence in the record and then, relying upon testimony from a VE, he determined whether an individual with that RFC could perform Plaintiff's past work or other work in the national economy. (R. 25–27.) Although the ALJ found that Dr. Lorenz's recitation of the FCE results supported many restrictions in an RFC that ultimately led to a non-disability finding, this does not translate into an "assumption" that the FCE alone authorized Plaintiff to work full-time.

Nor did the ALJ simply assume the presence of restrictions that were absent from Dr. Lorenz's recitation of the FCE, such as the RFC's prohibition on climbing ladders, ropes, or scaffolds and its allowance for occasional kneeling, crawling, and climbing ramps and stairs. (*See* R. 22, 446.) These limitations are supported by the opinions of the non-examining state agency consultants about Plaintiff's postural

activities, to which the ALJ gave "considerable weight." (R. 25, 92–93, 102–03.) The ALJ permissibly relied upon more than one evaluation or medical opinion to craft Plaintiff's RFC. *See Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) (explaining that an "ALJ is not required to rely entirely on a particular physician's opinion"); *Pascente v. Colvin*, No. 13 C 445, 2014 WL 1775821, at *7 (N.D. Ill. May 5, 2014) (finding no error in the ALJ's adoption of certain limitations from one doctor's opinion and other limitations from another doctor's opinion in assessing the claimant's RFC).

Plaintiff then contends that the FCE's sitting and standing restrictions, which restrict him to standing for fifty minutes and sitting for thirty minutes at a time, do not address what happens after these maximum durations are met or the length of time until Plaintiff can sit or stand again after they are met. Plaintiff, however, does not identify any record evidence that fills in these purportedly missing blanks; for example, he does not identify any evidence showing that he needs to "walk, stretch, recline, or perform any other postural activity" after sitting or standing for a certain amount of time. [Doc. No. 38 at 2]; *see Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008) (explaining that because a claimant "bears the burden of producing medical evidence" to support his disability claim, he "bears the risk of uncertainty"). Nor does Plaintiff cite any legal authority requiring this level of detail from the ALJ's RFC assessment. Indeed, as the VE was able to identify jobs that could be performed by an individual with the FCE's sitting and standing restrictions, there is no indication that additional details were necessary. (R. 79–

84); *cf. Milliken v. Astrue*, 397 F. App'x 218, 222 (7th Cir. 2010) (unpublished

decision) (explaining that "the RFC assessment is not an end in itself . . . but a tool"

that assists in determining whether a claimant "can perform past relevant work or

other work").

Plaintiff's argument also ignores the RFC's "medium work" restriction. (R.

22.) This restriction provides additional details about Plaintiff's sitting and

standing capabilities, as medium work requires standing or walking, off and on, for

a total of approximately six hours, with intermittent sitting allowed during the

remaining two hours of the workday. *See* SSR 83-10, 1983 WL 31251, at *6 (Jan. 1,

1983). Thus, Plaintiff can stand and sit (for up to fifty minutes and thirty minutes

at one time, respectively) in any combination that allows him to stand and walk for

at least six hours during the workday.

Plaintiff next invokes SSR 96-5p and *Barnett v. Barnhart*, 381 F.3d 664 (7th

Cir. 2004) to argue that "[t]he ALJ was required to develop Dr. Lorenz's opinion

further and re-contact him for clarification[.]" [Doc. No. 17-1 at 11.] SSR 96-5p and

*Barnett*, however, only call for re-contacting a physician when the basis underlying

the physician's opinion is unclear. *See Barnett*, 381 F.3d at 669 (requiring an ALJ

"to solicit additional information to flesh out an opinion *for which the medical*

*support is not readily discernable*") (emphasis added); SSR 96-5p, 1996 WL 374183,

at *6 (July 2, 1996) (requiring an ALJ to "make 'every reasonable effort' to

recontact" a treating source for clarification of the treating source's opinion if the

ALJ "*cannot ascertain the basis of the opinion from the case record*") (emphasis

added). Here, however, Plaintiff's FCE was unquestionably the basis for the functional restrictions contained in Dr. Lorenz's June 2010 note. More generally, Plaintiff has not shown that the ALJ's reliance upon Dr. Lorenz's summary of the FCE—as opposed to the FCE itself or a more detailed explanation by Dr. Lorenz—prejudiced him in any way. *See Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) (explaining that the Court "generally upholds the reasoned judgment of the [ALJ] on how much evidence to gather" and that the failure to obtain certain evidence must be prejudicial to require remand).

Plaintiff also argues for the first time in reply that it is "especially true" that the ALJ should have re-contacted Dr. Lorenz because the evidence, which shows that Plaintiff needed to lie down during the day, is consistent with interpreting Dr. Lorenz's note to allow for such an accommodation. [Doc. No. 38 at 3–4.] Plaintiff should have raised this argument in his opening brief, and he has forfeited it by failing to do so. *See Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009) (explaining that a "district court is entitled to find that an argument raised for the first time in a reply brief is forfeited"). In any event, the evidence cited by Plaintiff consists of his hearing testimony and a doctor's recitation of his complaints. [Doc. No. 38 at 3–4.] Because the ALJ's subjective symptom evaluation was not "patently wrong," as discussed below, the ALJ had no obligation to credit Plaintiff's alleged need to lie down. *See Elder*, 529 F.3d at 414 (affirming the ALJ's decision to disregard a claimant's testimony where the decision was not "patently wrong"). Moreover, Dr. Lorenz opined that Plaintiff could perform work "at a light physical demand" level

(R. 446), and the need to lie down is inconsistent with the ability to perform even less physically demanding (*i.e.*, sedentary) work. *See Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). Thus, it is not reasonable to read Dr. Lorenz's note as implicitly including an allowance for Plaintiff to lie down during the day. In sum, Plaintiff has not shown that the ALJ erred in relying upon Dr. Lorenz's June 2010 summary of Plaintiff's FCE to assess his RFC.

### 2. *Dr. Kirincic's July 2011 Examination*

In July 2011, Plaintiff presented to Marie Kirincic, M.D., another doctor from Hinsdale Orthopaedics. (R. 434–35.) Upon examining Plaintiff, Dr. Kirincic noted, among other things, that Plaintiff's ability to bend forward (flexion) was decreased by more than 25% and his ability to bend backward (extension) was decreased by 75%, with both actions causing pain in his right sacroiliac joint. (R. 434.) Dr. Kirincic also noted that Plaintiff's bilateral side bending was decreased by 25 percent and that he experienced "[p]ain with right lower extremity side bending." (R. 434–35.)

In 2013, state agency consultants Richard Lee Smith, M.D., and Reynaldo Gotanco, M.D., assessed Plaintiff's functional limitations at the initial and reconsideration stages of agency review, respectively. (R. 88–95, 97–105.) Both Dr. Smith and Dr. Gotanco concluded that Plaintiff could occasionally lift or carry twenty pounds; frequently lift or carry ten pounds; and occasionally stoop. (R. 92, 102–03.) In doing so, both consultants acknowledged Dr. Kirincic's July 2011

examination and, specifically, her findings regarding Plaintiff's ability to bend. (R. 92, 102.)

The ALJ concluded that nothing in Dr. Kirincic's examination compelled him to give "less weight to the [FCE] results and Dr. Lorenz's adoption of the same" or, as the parties put it, to assess a more restrictive RFC. (R. 25.) As for the state agency consultants, the ALJ gave "considerable weight" to their opinions about Plaintiff's postural activities, which includes their opinion that Plaintiff can occasionally stoop, but he only gave "some weight" to the consultants' opinions regarding Plaintiff's ability to lift and carry. (R. 25, 92, 103.) Instead, he gave greater weight to and adopted the lifting and carrying capabilities indicated by the FCE (forty-one pounds occasionally and twenty-four pounds frequently). (R. 22, 25, 446.)

In his opening brief, Plaintiff argues that the ALJ erred by failing to first consult "an independent medical source (including Dr. Lorenz)" before determining that Dr. Kirincic's examination did not warrant a more restrictive RFC. [Doc. No. 17-1 at 11–12.] But the ALJ was only required to recontact a medical source like Dr. Lorenz if "the evidence received is inadequate to determine whether the claimant is disabled." *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). And Plaintiff does not explain why that was the case here. Nor does Plaintiff explain how the ALJ abused his discretion in not calling an independent medical expert to review Dr. Kirincic's examination results. *See id.* (finding that "the ALJ acted within his discretion in deciding not to call a medical expert"); *Simonetti v. Colvin*, No. 13 CV

04394, 2014 WL 4063110, at *10 (N.D. Ill. Aug. 11, 2014) (noting that "it is not mandatory" for the ALJ to secure a medical expert).

And after the Commissioner filed her brief, Plaintiff abandoned this argument altogether. Instead, he asserts for the first time in his reply that the ALJ failed to assess potential conflicts between Dr. Kirincic's examination findings regarding Plaintiff's ability to bend and the RFC restrictions addressing Plaintiff's ability to stoop, lift, and carry. [Doc. No. 38 at 4–5.][4] Plaintiff has forfeited this argument by not raising it in his opening brief. *See Narducci*, 572 F.3d at 324. But even if Plaintiff had not forfeited this argument, he has failed to show that Dr. Kirincic's examination findings require remand, as was his burden. *See Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

The Court begins with the RFC's "occasional stooping" restriction, which requires Plaintiff to bend downward and forward at the waist for up to one-third of the time. SSR 83-10, 1983 WL 31251, at *5–6. It is true that requiring a claimant to stoop for any amount of time (even if only occasionally) is potentially inconsistent with a diminished ability to bend forward. *See Stroud v. Berryhill*, No. 2:17-CV-00067, 2018 WL 4501674, at *4 (N.D. Ind. Sept. 19, 2018) ("[I]f a claimant is limited to a certain degree of motion, the ALJ does not appropriately accommodate the claimant by providing durational limitations."). Even so, the Seventh Circuit has indicated that there is no inconsistency to be resolved when a medical opinion

---

[4] Plaintiff also refers to hearing testimony about his trouble climbing stairs, but it is unclear how this testimony relates to the RFC's stooping, lifting, and carrying restrictions.

finding that a claimant can occasionally stoop expressly relies upon findings that note the claimant's limited ability to bend. In *Mueller v. Colvin*, 524 F. App'x 282 (7th Cir. 2013) (unpublished decision), the claimant argued "that the ALJ failed to discuss the 'potential conflict' between [an examining doctor's] finding that she could bend forward only 50 degrees and [the state agency consultant's] opinion that she could stoop occasionally." *Id.* at 284, 286. The *Mueller* court rejected this argument, finding that "no conflict existed for the ALJ to resolve" because the state agency consultant explicitly relied upon the examining doctor's finding regarding the claimant's ability to bend. *Id.* at 286; *see also Brady v. Berryhill*, No. 2:16-CV-523-PRC, 2018 WL 1167216, at *9–10 (N.D. Ind. Mar. 6, 2018) (finding that there was no conflict to resolve between the state agency consultants' opinions, which did not limit the claimant's ability to stoop, and examination records showing limited lumbar flexion because the consultants' opinions acknowledged these findings).

Similarly, the state agency consultants here both expressly acknowledged Dr. Kirincic's examination findings regarding Plaintiff's ability to bend and still found that Plaintiff could occasionally stoop. (R. 92–93, 102–03.) And the ALJ's "occasional stooping" restriction relies at least in part upon the consultants' opinions on this issue. (*See* R. 25.) Given that the state agency consultants expressly considered Dr. Kirincic's examination findings, it is unclear why this medical scrutiny is insufficient to resolve any potential conflicts between Plaintiff's observed limitations in bending and her ability to stoop. *See Simonetti*, 2014 WL 4063110, at

*10 ("[T]he ALJ acted reasonably within her discretion in relying on the state agency and declining to obtain a medical expert.").

The two cases cited by Plaintiff—*Golembiewski v. Barnhart*, 322 F.3d 912 (7th Cir. 2003) and *Thomas v. Colvin*, 534 F. App'x 546 (7th Cir. 2013) (unpublished decision)—do not compel a different result. Although *Golembiewski* found that the ALJ did not resolve a potential conflict between an examination showing that the claimant had 40 degrees of lower back flexion and a later state agency finding that the claimant could stoop occasionally, there is no indication that the state agency finding relied on or otherwise acknowledged the earlier examination, as is the case here. 322 F.3d at 917. In fact, the Seventh Circuit in *Mueller* distinguished *Golembiewski* on the basis that, as discussed above, the state agency consultant's "occasional stooping" opinion explicitly relied on examination findings that noted the claimant's limited ability to bend. 524 F. App'x at 286. Moreover, the ALJ in *Golembiewski* failed to discuss the claimant's limited ability to bend and failed to address either of the medical assessments at issue. 322 F.3d at 917. That is not the case here: the ALJ specifically discussed Dr. Kirincic's July 2011 examination, including her findings regarding Plaintiff's ability to bend, as well as the state agency consultants' opinions. (R. 23–25.)

*Thomas* is closer to the facts of this case, but it also does not require remand. The Seventh Circuit found an unresolved conflict even though the state agency consultant's opinion that the claimant could stoop occasionally was made after reviewing a consultative examination report that found that the claimant had only

50 degrees of lower back flexion. 534 F. App'x at 551. First, because the consultative examination in *Thomas* "occurred 19 months before [the claimant] was diagnosed with severe lumbar stenosis and underwent significant back surgery," the court felt that another medical evaluation was likely necessary to re-evaluate the claimant's ability to bend. *Id.* This makes sense: after a severe stenosis diagnosis and major surgery, the claimant's ability to bend might have been significantly different than what had been reported 19 months earlier, thereby affecting the state agency consultant's reliance on the earlier examination and, likewise, his opinion about stooping.

In this case, however, Dr. Kirincic's examination took place shortly before the date last insured ("DLI"), and there is no indication that any diagnoses or procedures between that examination and the DLI would have altered her conclusions or the state agency consultants' acknowledgement of those conclusions. Second, the *Thomas* court reversed and remanded because the ALJ failed to address the claimant's need for a cane; the potential "occasional stooping" conflict was just one of many other issues the court felt should be addressed as well because remand was already being ordered. 534 F. App'x at 550–52. But here, the ALJ did not commit any reversible errors that require remand. Thus, the situation here aligns more closely with *Mueller*—which affirmed the ALJ's decision despite an alleged conflict between the stooping opinion and evidence of limited bending—than *Thomas*.

Plaintiff also fails to explain what conflict could exist between his ability to bend (as observed by Dr. Kirincic) and his ability to lift and carry (as assessed by the ALJ), as he was obligated to do. *See Shinseki*, 556 U.S. at 409–10; *Econ. Folding Box. Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 721 (7th Cir. 2008) ("It is not the court's responsibility to research the law and construct the parties' arguments for them."). Neither *Golembiewski* nor *Thomas* addressed a potential conflict between limitations on bending and an RFC's lifting and carrying requirements. *See Golembiewski*, 322 F.3d at 917; *Thomas*, 534 F. App'x at 551. Even if the lifting and carrying aspects of the RFC were too great—which Plaintiff has not shown—the state agency consultants found that Dr. Kirincic's findings supported the ability to lift and carry twenty pounds occasionally and ten pounds frequently. (R. 92, 102.) The VE testified that someone whose ability to lift and carry was restricted in this manner would still be able to perform other work. (R. 79–82.) Thus, based on the VE's testimony and the only medical evidence in the record interpreting Dr. Kirincic's examination findings, Plaintiff's ability to lift and carry would still not render him disabled. *See Baker v. Colvin*, No. 13 C 311, 2015 WL 719604, at *5 (N.D. Ill. Feb. 18, 2015) ("[E]ven if the ALJ had adopted the RFC limitations in the state agency consultants' reports, the ALJ would still find that [the claimant] is not disabled because jobs exist in the regional economy for someone with those limitations."). Accordingly, the ALJ did not reversibly err in assessing Dr. Kirincic's July 2011 examination.

## B.    Post-DLI Evidence

Plaintiff also contends that the ALJ reversibly erred by failing to discuss evidence that post-dated his September 30, 2011 DLI. The Commissioner does not dispute that the ALJ failed to discuss post-DLI evidence, but she argues that the post-DLI evidence here was irrelevant because it did not discuss or establish Plaintiff's limitations before the DLI.

Although Plaintiff must establish that he was disabled before his DLI, *McHenry v. Berryhill*, 911 F.3d 866, 869 (7th Cir. 2018), evidence arising after the DLI may still be relevant to this determination. *Catherine P. v. Berryhill*, No. 17 CV 50287, 2019 WL 1057313, at *6 (N.D. Ill. Mar. 6, 2019); *see Parker v. Astrue*, 597 F.3d 920, 925 (7th Cir. 2010) (explaining that an ALJ must "consider *all* relevant evidence, including the evidence regarding the plaintiff's condition at present" to determine whether the plaintiff was disabled by his DLI) (emphasis in original). Nonetheless, Plaintiff has not shown that a discussion of the post-DLI evidence could lead to a different result on remand, and thus the ALJ's failure to do so is at most a harmless error. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011).

The post-DLI evidence identified by Plaintiff is from April 2013 through October 2013. At an April 2013 visit to Dr. Lorenz, Plaintiff complained of lower back pain. (R. 432.) At that visit, Dr. Lorenz suspected an overlying pseudarthrosis[5]

---

[5] Pseudarthrosis "is the result of a failed spinal fusion" and "can occur at any place where spinal fusion was attempted[.]" Pseudarthrosis Causes & Symptoms, https://www.spinemd.com/symptoms-conditions/pseudarthrosis (last visited Apr. 29, 2019). It "presents as either axial (neck or back) or radicular (arms or leg) pain that occurs months to years after a previous lumbar fusion." *Id.*

and the loosening of hardware in Plaintiff's back, which was inserted during a prior spinal fusion surgery. (R. 433, 462.) An April 2013 CT scan indicated neural foraminal narrowing in Plaintiff's lumbar spine. (R. 507.) In July 2013, Plaintiff underwent surgery to remove the hardware that was implanted during his previous spinal fusion. (R. 462–67.) In the weeks following the surgery, Plaintiff reported that he walked with a cane and experienced mid-lower back pain that could increase to a 9 out of 10 with twisting and turning. (R. 481, 483.) In October 2013, a physician's assistant diagnosed Plaintiff with lumbar degenerative disc disease and lumbar facet syndrome. (R. 514–16.)

In his opening brief, Plaintiff contends that the April 2013 impressions of pseudarthrosis and neural foraminal narrowing, his July 2013 surgery, and his October 2013 diagnosis of degenerative disc disease gave rise to an inference that his impairments were present before his DLI and worsened after 2011. [Doc. No. 17-1 at 14.][6] But missing entirely from Plaintiff's opening brief is any discussion as to why this is the case. The temporal gap between the DLI and the evidence at issue here is not one of a few weeks or months; instead, all the evidence identified by Plaintiff post-dates his September 30, 2011 DLI by at least a year and a half. *See Curtis v. Colvin*, No. 12 C 8964, 2014 WL 1917094, at *2, *5 (N.D. Ill. May 13, 2014) (finding that medical evidence from March and April 2011 did not support the claimant's contention that he was disabled by December 31, 2009). Moreover,

---

[6] Plaintiff also cites to hearing testimony without any clear explanation as to its significance. [Doc. No. 17-1 at 14.] As discussed below, the ALJ was not obligated to believe Plaintiff's testimony or his allegations.

Plaintiff asserts that the post-DLI evidence shows that his impairments have worsened since 2011, which makes the evidence even less relevant, as "the Seventh Circuit has recognized that worsening of a claimant's condition after the date last insured does not provide a basis for granting benefits during the relevant time period." *Rubio v. Astrue*, No. 10 C 6529, 2011 WL 3796755, at *9 (N.D. Ill. Aug. 24, 2011) (citation omitted). Indeed, if Plaintiff's impairments deteriorated between September 2011 and April 2013, the evidence from April 2013 and afterwards would show Plaintiff's deteriorated abilities *at that time*—not his abilities during the Relevant Period. As such, the Court does not see how the post-DLI evidence helps Plaintiff in this scenario. *See Million v. Astrue*, 260 F. App'x 918, 921–22 (7th Cir. 2008) (unpublished decision) (explaining that post-DLI medical records were "relevant only to the degree that they shed light on [the claimant's] impairments and disabilities from the relevant insured period").

In his reply brief, Plaintiff argues for the first time that certain pre-DLI evidence shows that pseudarthrosis arose prior to his DLI. [Doc. No. 38 at 6–7.] Again, Plaintiff should not have waited until his reply brief to identify this evidence and make this argument. But even if the evidence did show that he suffered from pseudarthrosis (or any other impairment) before the DLI, Plaintiff has not explained how this would have led to a different conclusion by the ALJ. All the conditions identified—pseudarthrosis, neural foraminal narrowing, and degenerative disc disease—involve his lumbar spine, and the ALJ already determined that Plaintiff suffered from severe lumbar spine impairments. (R. 21.)

The ALJ similarly acknowledged Plaintiff's continued complaints of back pain. (*See, e.g.*, R. 23) ("The claimant alleges disability because of constant lower back pain and nerve damage. . . . The record establishes the claimant has complained of back pain for several years."). Plaintiff has thus failed to establish that the later complaints of back pain would have changed the ALJ's evaluation.

Plaintiff also fails to explain how the post-DLI evidence shows that the ALJ's RFC assessment is inadequate or otherwise flawed. The relevant question is whether Plaintiff's impairments affect his ability to work full time, *see Johnson v. Barnhart*, 449 F.3d 804, 805 (7th Cir. 2006), and Plaintiff must demonstrate how his impairments "support specific limitations affecting [his] capacity to work." *Weaver v. Berryhill*, 746 F. App'x 574, 579 (7th Cir. 2018) (unpublished decision). Merely identifying various post-DLI impressions, diagnoses, complaints, or procedures, without more, does not establish a work-related functional limitation. *See id.* at 578–79; *Richards v. Berryhill*, 743 F. App'x 26, 30 (7th Cir. 2018) (unpublished decision); *Perez v. Astrue*, 881 F. Supp. 2d 916, 945 (N.D. Ill. 2012); *see also Johnson v. Berryhill*, No. 18 C 1395, 2018 WL 5787121, at *7 (N.D. Ill. Nov. 5, 2018) ("Evidence of Plaintiff's lower back impairments does not automatically equate to functional limitations caused by those impairments.").

Lastly, Plaintiff again invokes SSR 96-5p and *Barnett* to contend that "the ALJ was required to re-contact Dr. Lorenz to see if he believed the limitations in the FCE would still apply as of the" DLI. [Doc. No. 17-1 at 15.] As already discussed, SSR 96-5p and *Barnett* only call for re-contacting Dr. Lorenz when the basis

underlying his opinion is unclear. *See Barnett*, 381 F.3d at 669; SSR 96-5p, 1996 WL 374183, at *6. That is not the situation here. Moreover, "[t]he Seventh Circuit has repeatedly found that an ALJ does not automatically have to update a medical opinion where there is evidence that post-dates" that opinion. *Peters v. Berryhill*, No. 16 CV 6901, 2018 WL 1762442, at *7 (N.D. Ill. Apr. 12, 2018) (internal quotations omitted). Instead, an ALJ need only recontact a medical source if the evidence "is inadequate to determine whether the claimant is disabled." *Skarbek*, 390 F.3d at 504. Again, that is not the situation here. The ALJ had no obligation to re-contact Dr. Lorenz to address the post-DLI evidence.

Plaintiff has not shown that the ALJ's failure to discuss post-DLI evidence was harmful, and "[s]imply asserting error without more, as Plaintiff has done, is not enough." *Falls v. Berryhill*, No. 17 C 2805, 2018 WL 5839955, at *9 (N.D. Ill. Nov. 7, 2018). Thus, remand is not required on this issue.

### C.    The ALJ's Subjective Symptom Assessment

Finally, the Court turns to Plaintiff's argument that the ALJ erred in finding his subjective symptom allegations "not entirely credible." (*See* R. 23.) An ALJ must adequately explain his evaluation of a claimant's subjective symptom allegations "by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013). This discussion must allow the Court "to determine whether [the ALJ] reached [his] decision in a rational manner, logically based on [his] specific findings and the evidence in the record." *McKinzey*, 641 F.3d at 890.

Nonetheless, the Court will overturn an ALJ's subjective symptom evaluation only if it is "patently wrong," *i.e.*, it "lacks *any* explanation or support." *Elder*, 529 F.3d at 413–14 (emphasis added). Thus, the ALJ's evaluation need not be flawless, and it will not meet the "patently wrong" threshold so long as it is supported by enough valid reasons. *See Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009); *Halsell v. Astrue*, 357 F. App'x 717, 722–23 (7th Cir. 2009) (unpublished decision).

Here, the ALJ found that Plaintiff's statements about his symptoms were "not entirely credible for the reasons explained in this decision." (R. 23.) One reason the ALJ gave was that he could not fully credit Plaintiff's testimony about his difficulties with walking because it conflicted with other evidence in the record. (*Id.*) Specifically, the ALJ noted that although Plaintiff testified that he had difficulty walking for prolonged periods of time, physical therapy records showed that Plaintiff's ability to walk and stand for prolonged periods of time improved. (*Id.*) Moreover, the ALJ noted that Anis Mekhail, M.D.[7] released Plaintiff back to work at full duty in January 2010. (*See id.*) The ALJ also found that Plaintiff's testimony that he needed to use a cane to walk to the mailbox conflicted with his report to Dr. Mekhail in September 2009 that he did not need to use a cane. (*Id.*) Later, the ALJ concluded that in view of Dr. Lorenz's 2010 findings and Dr. Kirincic's 2011 findings, Plaintiff's "allegations and testimony of very limited walking, standing and sitting is inconsistent with the record." (R. 24.)

---

[7] Dr. Mekhail performed Plaintiff's lumber spinal fusion in May 2009. (R. 272–76.)

An ALJ may discount a claimant's testimony based on conflicts between that testimony and other evidence, such as medical evaluations and the claimant's prior reports to his physicians. *See Elder*, 529 F.3d at 413–14 (upholding the ALJ's decision to disregard the claimant's testimony because it contradicted what the claimant had previously told her doctor); *Kittelson v. Astrue*, 362 F. App'x 553, 557–58 (7th Cir. 2010) (unpublished decision) (upholding an adverse subjective symptom assessment that was based on discrepancies between the claimant's testimony and her doctors' evaluations); 20 C.F.R. § 404.1529(c)(4) (June 13, 2011 to Apr. 28, 2016) (explaining that the ALJ will consider "the extent to which there are any conflicts between [a claimant's] statements and the rest of the evidence" in evaluating the claimant's symptom allegations). As Plaintiff does not challenge this reasoning on appeal, it constitutes a basis to uphold the ALJ's subjective symptom evaluation. *See Vanover v. Colvin*, 627 F. App'x 562, 566–67 (7th Cir. 2015) (unpublished decision) (upholding the ALJ's subjective symptom assessment because it was based on several factors that were not challenged by the claimant); *see also Elder*, 529 F.3d at 414 (upholding a subjective symptom assessment that was supported by a single valid reason); *Kittelson*, 362 F. App'x at 557–58 (same).

Another reason the ALJ put forth for his "not entirely credible" conclusion involved Plaintiff's attempts to find work. (R. 24.) The ALJ pointed out that instead of attempting to return to the workforce after Dr. Mekhail released him back to work at full duty in January 2010, Plaintiff sought a second opinion from another doctor. (R. 23–24.) That doctor, Dr. Lorenz, found in June 2010 that Plaintiff could

work within the parameters of his recent FCE. (*Id.*) After receiving Dr. Lorenz's opinion, Plaintiff only looked for work by contacting "places of employment where he previously worked," and "he never consulted employment or vocational rehabilitation agencies despite whatever predisposition he may have had for looking for work closer to home." (R. 24.)

Thus, the ALJ viewed Plaintiff's efforts to find work (or lack thereof) as evidence that he did not want to work even though Drs. Mekhail and Lorenz said that he could. The ALJ properly discounted Plaintiff's allegations for this reason as well, as a claimant's "'lack of effort to find work' may diminish [his] credibility." *Sombright v. Astrue*, No. 10 C 2924, 2011 WL 1337103, at *11 (N.D. Ill. Apr. 6, 2011) (quoting *Simila*, 573 F.3d at 520); *see also Messerly v. Colvin*, No. 12-3207, 2015 WL 6759870, at *8 (C.D. Ill. Nov. 5, 2015) (finding that a lack of work motivation combined with the ability to work suggested that the claimant "did not want to work and served to diminish his credibility regarding his disability").

Plaintiff challenges this reasoning, arguing that a desire to work is not inconsistent with an inability to work. But the ALJ did not discount Plaintiff's allegations based on a perceived inconsistency between his desire to work and an inability to work. Instead, the ALJ discounted Plaintiff's allegations because he did not try hard enough to find work after his doctors told him that he could return to work.

Plaintiff's related arguments are also unavailing. Although Plaintiff contends that no evidence in the record shows "that he was offered the use of an employment

agency or [that] he would have been able to afford one" [Doc. No. 17-1 at 16], it is equally true that nothing in the record suggests that Plaintiff could not reach out to an employment agency on his own or that doing so would cost him any money. Plaintiff also contends that his testimony shows his belief that he could not work full time because of his pain. [*Id.*; Doc. No. 38 at 8.] But the question is whether this testimony was credible in the first place, so citing it does not show that the ALJ was *required* to find that Plaintiff's pain (as opposed to a lack of desire or motivation) affected his efforts in looking for work. As such, Plaintiff has not shown that the ALJ's interpretation and consideration of his efforts to find work was "patently wrong."

Another reason the ALJ gave to support his subjective symptom evaluation involved Plaintiff's testimony about a need to lie down up to 75% of the day. (R. 24.) The ALJ found this testimony inconsistent with Dr. Lorenz's June 2010 determination that Plaintiff was at maximum medical improvement. (*Id.*) The ALJ also noted that Dr. Lorenz never stated that Plaintiff required prolonged or frequent rest periods. (*Id.*) That Plaintiff's testimony was inconsistent with and unsupported by his doctor's evaluations is another legitimate reason for finding his allegations not fully credible. *See Kittelson*, 362 F. App'x at 557–58 (upholding an adverse subjective symptom assessment that was based on discrepancies between the claimant's allegations and her doctors' evaluations); *Johnson*, 2018 WL 5787121, at *6 (noting that the ALJ could consider the absence of medical opinions supporting the claimant's alleged limitations in evaluating his allegations).

Plaintiff, however, maintains that the ALJ erred in finding an inconsistency between his testimony about a need to lie down up to 75% of the day and Dr. Lorenz's "maximum medical improvement" determination. This argument relies on the fact that Plaintiff's testimony on this issue and the questions posed by Plaintiff's attorney to elicit this testimony are couched in the present tense:

> Q.     Now, you mentioned that you might be able to sit for 30 to 45 minutes and then have to [lie] down for 45 minutes. Do you have to – do you do – *do you lie down for a portion of the day? Can you give me an idea of how much lying down you do during the day?* Is it a quarter of the day? Half of the day?
>
> A.     Yeah, I would say from when I see my wife in the morning to when she comes home and we see each other for a few hours until she goes to sleep, I mean, other than getting up to use the washroom, doing what I can, grabbing my feet and kind of pre-setting stuff, and I say pre-set – the milk at the end of the – in the fridge so it's easy to access and the bowls and spoons and stuff. *I would say about 70, 75 percent of the time I'm [lying] down.* Or, going back to [lie] down if not – you know, if I go to get the mail, I make the effort to try to get there and back, but then I have to [lie] down again.

(R. 75) (emphases added). Thus, according to Plaintiff, his testimony was about his condition at the time of the hearing—in December 2014—and it does not conflict with Dr. Lorenz's opinion about his capabilities in June 2010.

Plaintiff's argument overlooks the fact that he cannot establish his entitlement to DIB based on his condition at the time of the hearing, which took place years after his insured status expired in September 2011. *See Martinez v. Astrue*, 630 F.3d 693, 699 (7th Cir. 2011). Indeed, the ALJ told Plaintiff at the outset of the hearing that his questions would focus on the December 31, 2007 through September 30, 2011 Relevant Period. (R. 39.) It would not make sense for

Plaintiff to testify, and his counsel to ask questions, about his condition in December 2014. *Cf. Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007) (explaining that "a claimant represented by counsel is presumed to have made his best case before the ALJ").

Plaintiff likewise ignores the fact that his counsel expressly linked the question at issue to Plaintiff's prior testimony about lying down: "Now, you mentioned that you might be able to sit for 30 to 45 minutes and then have to [lie] down for 45 minutes." (R. 75.) That prior testimony was focused not on Plaintiff's present condition, but on "a period of time *about two years before*" Plaintiff's 2013 surgery. (R. 71–72) (emphasis added). And shortly before this testimony, Plaintiff's counsel reminded Plaintiff that "we're referring to, you know, prior to September 2011" and he indicated that his questions would no longer refer to "the period of time in question." (R. 71.) These statements by Plaintiff's counsel could reasonably be read as suggesting that all subsequent questions to Plaintiff implicitly referred to "the period of time in question," *i.e.*, prior to September 2011. Thus, despite the use of present tense by Plaintiff and his counsel, it was reasonable for the ALJ to read Plaintiff's testimony as referring to his alleged need to lie down during the Relevant Period and not as of December 2014. *See Falls*, 2018 WL 5839955, at *11 ("The Court's role is not to reinterpret [the] evidence, but to merely ensure that the ALJ's interpretation was reasonable.").

Next, Plaintiff contends that the ALJ failed to discuss Dr. Kirincic's examination notes, which reflect limitations in bending with accompanying pain,

because they support his allegations of physical limitations. But the Court does not know which allegations are purportedly supported by Dr. Kirincic's notes, as Plaintiff cites seven pages of hearing testimony without explanation. [Doc. No. 17-1 at 17 (citing R. 71–77).] Plaintiff apparently expects the Court to review these pages and identify for itself the supported allegations and determine their significance. The Court declines to do so. *See Howard v. Inland SBA Mgmt. Corp.*, 32 F. Supp. 3d 941, 948 (N.D. Ill. 2014) ("It simply is not the court's job to sift through the record to find evidence to support a party's claim.").

Lastly, Plaintiff contends that the ALJ erred by failing to discuss all the factors set forth in SSR 16-3p and, specifically, Plaintiff's allegations of pain, his exacerbating pain factors, and his prescribed treatment. As an initial matter, because the ALJ issued his decision on February 5, 2015 (R. 27), SSR 96-7p applies, not SSR 16-3p. *McCulley v. Berryhill*, No. 13 C 6031, 2019 WL 1292982, at *6 n.2 (N.D. Ill. Mar. 20, 2019). Moreover, an ALJ is not required "to analyze and elaborate on each of" the factors set forth in SSR 96-7p when evaluating a claimant's subjective symptom allegations. *Clay v. Apfel*, 64 F. Supp. 2d 774, 781 (N.D. Ill. 1999); *accord Morgan v. Colvin*, No. 14 C 3774, 2015 WL 5116961, at *5 (N.D. Ill. Aug. 28, 2015). Nor does the ALJ need to "explicate every piece of evidence that figures" into his subjective symptom evaluation. *Petrie v. Colvin*, No. 12 C 4682, 2014 WL 7254448, at *3 (N.D. Ill. Dec. 18, 2014); *see also Simila*, 573 F.3d at 517 ("[T]he ALJ need not mention every strand of evidence in her decision[.]").

In any case, the ALJ did discuss the only evidence that Plaintiff says supports his pain allegations and his exacerbating pain factors, namely Dr. Kirincic's July 2011 examination notations. (R. 23–24.) In doing so, the ALJ recounted many of Plaintiff's reports of pain and aggravating factors to Dr. Kirincic:

> The claimant returned on July 21, 2011, to see Dr. Marie Kirincic, an associate of Dr. Lorenz. *He reported increased intermittent pain with prolonged sitting and walking and standing for longer than an hour but decreased with frequent movement and lying on the left side*. . . . Extension decreased by 75% *with pain in right sacroiliac joint*, forward bending decreased by more than 25% *with pain in right sacroiliac joint* and bilateral side-bending decreased by 25%.

(R. 23) (emphasis added). Furthermore, the ALJ specifically acknowledged Plaintiff's complaints of back pain. (*See, e.g.*, *id.*) ("The claimant alleges disability because of constant lower back pain and nerve damage. . . . The record establishes the claimant has complained of back pain for several years.").

As for his prescribed treatment, Plaintiff argues that his "pain medications, injections, epidurals," and physical therapy "seemingly" support his allegations. [Doc. No. 17-1 at 19.] But as with many of his arguments, Plaintiff fails to explain why this is so. Not all treatments support finding a claimant's pain allegations credible; to the contrary, an ALJ may discount a claimant's allegations based on his reliance on "routine and conservative" treatment. *Bradley v. Colvin*, No. 15 C 8107, 2016 WL 5928811, at *14 (N.D. Ill. Oct. 11, 2016). For instance, physical therapy and epidural injections, which Plaintiff highlights, are generally conservative in nature. *See Schomas v. Colvin*, 732 F.3d 702, 709 (7th Cir. 2013) (characterizing physical therapy as conservative); *Olsen v. Colvin*, 551 F. App'x 868, 875 (7th Cir.

2014) (unpublished decision) (noting that epidural injections are "characterized as 'conservative treatment'"). Moreover, Plaintiff was "weaning himself off" his pain medication by January 2010, (R. 334), which would suggest that his pain was not as severe as he later claimed. In any event, Plaintiff fails to identify the medications that purportedly support his symptom allegations. Plaintiff has not shown that the ALJ's evaluation of his symptoms and allegations was "patently wrong," as was his burden. *See Horr v. Berryhill*, 743 F. App'x 16, 19–20 (7th Cir. 2018) (unpublished decision). Accordingly, the Court upholds the ALJ's subjective symptom evaluation.

## CONCLUSION

For the foregoing reasons, Plaintiff's request to reverse the Commissioner's decision is denied, and the Commissioner's motion for summary judgment [Doc. No. 26] is granted. The Court affirms the Commissioner's final decision.

**SO ORDERED.**                                              **ENTERED:**


**DATE:**  ___May 13, 2019___                           _____
                                                         **HON. MARIA VALDEZ**
                                                         **United States Magistrate Judge**